UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-80150-CR-ROSENBERG/Reinhart

UNITED STATES OF AMERICA )
)
v. )
)
APRIL HUFF, )
)
Defendant. )
_____ )

**PLEA AGREEMENT**

The United States Attorney's Office for the Southern District of Florida ("this Office") and APRIL HUFF (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to plead guilty to Count 2 of the indictment, charging theft of mail by a Postal Service employee, in violation of 18 U.S.C. § 1709; and Counts 4, 5, and 9 of the indictment, which each charge passing a forged obligation of an organization, in violation of 18 U.S.C. § 513(a).

2. This Office agrees to seek dismissal of the remaining counts of the indictment after sentencing.

3. The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory

sentence under the Sentencing Guidelines. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offenses identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

4. The defendant also understands and acknowledges that as to Count 2, the Court may impose a statutory maximum term of imprisonment of up to five years, followed by a term of supervised release of up to three years. As to each of Counts 4, 5, and 9, the Court may impose a statutory maximum term of imprisonment of up to ten years, followed by a term of supervised release of up to three years. As to all counts, in addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $250,000. As to Counts 4, 5, and 9, the Court may order forfeiture and must order restitution.

5. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 4 of this agreement, a special assessment in the amount of $400 will be imposed on the defendant. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing. If a defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

6. This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

7. This Office agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, this Office will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. This Office, however, will not be required to make this motion and this recommendation if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

8. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, this Office, or the probation office, is a prediction, not a promise, and is not binding on this Office, the probation office or the Court. The defendant understands further that any recommendation that this Office makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 3 above, that the defendant may not withdraw her plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, this Office, or a recommendation made jointly by the defendant and this Office.

9. Pursuant to 18 U.S.C. § 3663(a)(3), the defendant agrees to pay total restitution in the amount of **$2,133.12**. The defendant further agrees and stipulates that restitution shall be paid as follows:

   a. $150.00 to Victim 1 (Check #177)

   b. $250.00 to TD Bank, N.A. as a substitute victim for Victim 1 for Check #205, pursuant to 18 U.S.C. § 3664(j)(1)

   c. $1,583.12 to Bank of America, N.A. as a substitute victim for Victim 2, pursuant to 18 U.S.C. § 3664(j)(1)

   d. $250.00 to American Express National Bank as a substitute victim for Victim 3, pursuant to 18 U.S.C. § 3664(j)(1)

10. The defendant agrees, in an individual and any other capacity, to forfeit to the United States, voluntarily and immediately, any right, title, and interest to any property, real or personal, which constitutes or is derived from proceeds traceable to such violation, pursuant to 18,

U.S.C. § 981(a)(1)(C), as incorporated by 28 U.S.C. § 2461(c), and the provisions of 21 U.S.C. § 853.

11. The defendant further agrees that forfeiture is independent of any assessment, fine, cost, restitution, or penalty that may be imposed by the Court. The defendant knowingly and voluntarily agrees to waive all constitutional, legal, and equitable defenses to the forfeiture, including excessive fines under the Eighth Amendment to the United States Constitution. In addition, the defendant agrees to waive any applicable time limits for administrative or judicial forfeiture proceedings, the requirements of Fed. R. Crim. P. 32.2 and 43(a), and any appeal of the forfeiture.

12. The defendant also agrees to fully and truthfully disclose the existence, nature and location of all assets in which the defendant has or had any direct or indirect financial interest or control, and any assets involved in the offense of conviction. The defendant agrees to take all steps requested by the United States for the recovery and forfeiture of all assets identified by the United States as subject to forfeiture. This includes, but is not limited to, the timely delivery upon request of all necessary and appropriate documentation to deliver good and marketable title, consenting to all orders of forfeiture, and not contesting or impeding in any way with any criminal, civil or administrative forfeiture proceeding concerning the forfeiture.

13. This is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations, or understandings.

Date: 11/30/23   By: _____
MARKENZY LAPOINTE
UNITED STATES ATTORNEY

ALEXANDRA CHASE
ASSISTANT UNITED STATES ATTORNEY

Date: 11/30/2023   By: _____
ROBERT E. ADLER
ASSISTANT FEDERAL PUBLIC DEFENDER

Date: 11/30/2023   By: _____
APRIL HUFF
DEFENDANT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-80150-CR-ROSENBERG/Reinhart

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| APRIL HUFF, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## FACTUAL PROFFER

The United States of America and the defendant, APRIL HUFF, hereby agree that, had this case proceeded to trial, the United States would have proved beyond a reasonable doubt the following facts, which occurred in the Southern District of Florida and elsewhere:

At all times relevant to the indictment, APRIL HUFF was employed by the U.S. Postal Service as a mail handler and assigned to the West Palm Beach Processing and Distribution Service located at 3200 Summit Boulevard, West Palm Beach, Florida.

Victim 3 reported to law enforcement that he had ordered checks from his American Express National Bank ("American Express")[1] website, but the checks never arrived. Victim 3 then discovered that Check #101, made payable to APRIL HUFF in the amount of $250.00, was deposited against his American Express bank account on or about May 13, 2022.

Law enforcement obtained and reviewed the tracking history for the original shipment of checks, which showed that the shipment arrived at the West Palm Beach Processing and Distribution Service on May 13, 2022. The shipping company also identified the package as a flat package, which

---

[1] At all times relevant to the indictment, the deposits of American Express were insured by the Federal Deposit Insurance Corporation.

are processed on the flat sorter. U.S. Postal Service employment records show that APRIL HUFF was working the flat sorter machine operation on May 13, 2022.

Check #101, drawn on Victim 3's American Express account, was deposited into a Wells Fargo checking account for which HUFF was the sole signatory. Law enforcement also identified a Navy Federal Credit Union checking account for which HUFF was the sole signatory. A review of both accounts revealed additional checks from Victims 1 and 2 that had been deposited.

Victim 1 (a husband and wife collectively referred to herein as "Victim 1") are residents of New Jersey who spend the winter in Delray Beach, Florida. Victim 1 ordered new checks that shipped via the U.S. Postal Service on or about January 14, 2022. The shipment contained 200 checks numbered 176 through 375, drawn on Victim 1's TD Bank, N.A. ("TD Bank")[2] account. As of January 21, 2022, Victim 1's mail was forwarded to an address in Delray Beach, ZIP code 33445. Mail for this ZIP code is also processed on the flat sorter at the West Palm Beach Processing and Distribution Center, and APRIL HUFF was assigned to the flat sorter during the general time frame during which the check shipment would have passed through.

Check #205, drawn on Victim 1's TD Bank account, dated March 7, 2022 and made payable to APRIL HUFF, was deposited into HUFF's Navy Federal Credit Union account on the same date. Check #177, drawn on Victim 1's TD Bank account, dated March 28, 2022 and made payable to APRIL HUFF, was deposited into HUFF's Wells Fargo account on the same date.

Victim 2 had ordered checks for his Bank of America, N.A. ("Bank of America")[3] checking account that never arrived. Law enforcement identified multiple checks drawn on Victim 2's Bank of America account, all made payable to APRIL HUFF, as follows:

---

[2] At all times relevant to the indictment, the deposits of TD Bank were insured by the Federal Deposit Insurance Corporation.
[3] At all times relevant to the indictment, the deposits of Bank of America were insured by the Federal Deposit Insurance Corporation.

2

- April 1, 2022: Check #5969, in the amount of $125.00, deposited into HUFF's Navy Federal Credit Union account

- April 4, 2022: Check #5942, in the amount of $206.00, deposited into HUFF's Wells Fargo account.

- April 21, 2022: Check #5944, in the amount of $208.00, deposited into HUFF's Wells Fargo account

- May 5, 2022: Check #5946, in the amount of $108.12, deposited into HUFF's Navy Federal Credit Union account

- May 16, 2022: Check #5945, in the amount of $218.00, deposited into HUFF's Wells Fargo account

- May 31, 2022: Check #5955, in the amount of $218.00, deposited into HUFF's Wells Fargo account

- July 4, 2022: Check #5965, in the amount of $250.00, deposited into HUFF's Wells Fargo account

- July 15, 2022: Check #5964, in the amount of $250.00, deposited into HUFF's Wells Fargo account

Wells Fargo identified the IP address associated with the mobile deposit of Check #5942. The IP address belonged to Comcast, who identified the subscriber information for that IP address on that date as APRIL HUFF at her residence within the Southern District of Florida.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: 11/30/23     By: _____
ALEXANDRA CHASE
ASSISTANT UNITED STATES ATTORNEY

Date: 11/30/23     By: _____
ROBERT E. ADLER
ASSISTANT FEDERAL PUBLIC DEFENDER

Date: 11/30/23     By: _____
APRIL HUFF
DEFENDANT

3